

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 5, 2023

**BY ECF**
Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Ashine McRae.*, S1 21 Cr. 587 (LGS)

Dear Judge Schofield:

      The Government submits this letter in advance of the May 22, 2023 sentencing of defendant Ashine McRae. For the reasons set forth below, the Government respectfully submits that the Court should sentence the defendant to the mandatory term of ten years' imprisonment.

### I.  Offense Conduct

      The defendant, along with co-defendants Thomas Parker, Sr. and Thomas Parker, Jr., was a member of a narcotics crew that primarily distributed narcotics at two locations in Manhattan between 2nd and 3rd Avenues on East 122nd Street (Location-1) and in and around 2253 3rd Avenue, which is approximately 200 feet from Location-1 (Location-2). (PSR ¶ 26).

      Between November 2020 and October 2020, the defendant, while in state custody on separate charges, engaged in a series of prison calls in which he directed others to continue to perpetrate the narcotics conspiracy. (PSR ¶ 22). On at least one call, the defendant directed co-defendant Thomas Parker, Sr. to continue to operate the narcotics conspiracy in the defendant's absence. (PSR ¶ 25). The defendant was subsequently released form custody in July 2021. (PSR ¶ 22). Approximately two months after his release from state custody, on September 6, 2021, the defendant engaged in a shooting near Location-1 and Location-2 in which he discharged his firearm in the immediate vicinity of other civilians. (PSR ¶ 27). Law enforcement recovered four rounds of ammunition from the scene. (*Id.*)

      Also in September 2021, Thomas Parker, Sr. and Thomas Parker, Jr. engaged in a series of narcotics sales with an undercover law enforcement officer. (PSR ¶ 31-35). On September 15, 2021, law enforcement searched the residence of Thomas Parker, Jr. and Thomas Parker, Sr. pursuant to a judicially-authorized search warrant. (PSR ¶ 36). Law enforcement recovered from the bedroom where Thomas Parker, Jr. resided, among other things, a loaded .22 caliber Jennings firearm and 26 rounds of ammunition. (PSR ¶ 39). In addition, law enforcement recovered from a closet located next door to Thomas Parker's bedroom sixteen 9mm Luger cartridges, contained

inside of an ammunition box, in addition to three Glock magazines. (*Id*.). Law enforcement also recovered from a second closet located adjacent to the living room three .25 caliber rounds and three .32 caliber rounds. (*Id*.). Law enforcement also recovered narcotic substances from the residence, including at least 100 grams of heroin and 40 grams of fentanyl, as well as various narcotics paraphernalia. (PSR ¶¶ 39-40). The following day, on September 16, 202, Thomas Parker, Jr. and Thomas Parker, Sr. were arrested.

Between December 2021 and January 2021, the defendant was observed on surveillance video returning to a building in the immediate vicinity of Location-1 and Location-2 where he resided. (PSR ¶ 42). On several occasions, the defendant was observed engaged in narcotics trafficking activities from his personal residence. (PSR ¶¶ 42-46). On January 19, 2022, the defendant was arrested. (PSR ¶ 49). During a search of defendant's residence incident to his arrest, law enforcement recovered two bullet-proof vests.

## II.   Guilty Plea and Applicable Guidelines Range

On September 15, 2021, Thomas Parker, Jr. and Thomas Parker, Sr. were charged by Complaint with narcotics conspiracy, in violation of Title 21, United States Code, Section 846. In addition, Thomas Parker, Jr. was charged with using, carrying, and possessing a firearm during, in relation to, and in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Sections 924(c) and 2. On September 23, 2021, a grand jury in the Southern District of New York returned an indictment charging Thomas Parker, Jr. and Thomas Parker, Sr., with the same offenses.

On February 16, 2022, a grand jury in the Southern District of New York returned a superseding indictment (the "Superseding Indictment"), which charged the defendant, Thomas Parker, Jr., and Thomas Parker, Sr., with narcotics conspiracy, in violation of Title 21, United States Code, Section 846 (Count One); and charged Thomas Parker, Jr. with using, carrying, and possessing a firearm during, in relation to, and in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Sections 924(c) and 2 (Count Two). In addition, the defendant was charged with using, carrying, brandishing, and discharging a firearm during, in relation to, and in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Sections 924(c) and 2 (Count Three); and being a felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g) (Count Four).

On September 12, 2022, Thomas Parker, Jr. pleaded guilty pursuant to a plea agreement to Count Two of the Superseding Indictment. (Doc. Nos. 48-49). The Applicable Guidelines range for Count Two was the statutory mandatory five-year term of imprisonment. *See* 18 U.S.C. § 924(c)(1)(A)(i); U.S.S.G. § 2K2.4. On January 9, 2023, Thomas Parker, Jr. was sentenced to five years' imprisonment.

On September 16, 2022, Thomas Parker, Sr. pleaded guilty pursuant to a plea agreement (the "Plea Agreement") to Count One of the Superseding Indictment. (Doc. No. 50-51). Sentencing is scheduled for June 13, 2023. (Doc. No. 65).

On January 31, 2023, the defendant pleaded guilty pursuant to a plea agreement to Count Three of the Superseding Indictment. (Doc. No. 77). The Applicable Guidelines range for Count

Three is the statutory mandatory ten-year term of imprisonment.  *See* 18 U.S.C. § 924(c)(1)(A)(i)(ii); U.S.S.G. § 2K2.4.

### III. Discussion

#### A. Applicable Law

While advisory following *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines remain "the starting point and the initial benchmark" for sentencing proceedings. *Gall v. United States*, 552 U.S. 38, 49 (2007).  That is because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id.* at 46.  For that reason, "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

In imposing a sentence, the Court must consider the factors set forth at 18 U.S.C. § 3553(a), which include the "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1), and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* § 3553(a)(6). The factors also include the "need for the sentence imposed"

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

*Id.* § 3553(a)(2).

#### B. The Court Should Impose the Mandatory Ten-Year Sentence

Here, the applicable Sentencing Guideline is the mandatory ten-year term of imprisonment. *See* U.S.S.G. § 2K2.4.  Such a sentence is appropriate and reasonable here given the nature and circumstances of the defendant's offense, the need to protect the public and promote respect for the law, to provide just punishment, and to deter future criminal conduct.

It goes without saying that the crime committed by the defendant is incredibly serious.  The defendant conspired with others to sell fentanyl and heroin and continued to direct the narcotics scheme while in state custody.  Moreover, the defendant used violence in furtherance of his drug trafficking activity by brandishing and discharging a firearm near Location-1 and Location-2 while civilians were in the immediate vicinity.  The defendant's criminal actions were incredibly

dangerous and could easily have resulted in lethal harm to members of the community. In short, the defendant's conduct reflects a troubling disregard for the risk of harm or death to others.

Further, a Guidelines sentence is appropriate in light of the defendant's extensive criminal history. The instant offense was not aberrant conduct. The current case represents the defendant's twelfth known criminal conviction. His prior convictions include, several narcotics offenses, including attempted criminal possession of a controlled substance in the 3rd degree (twice); attempted criminal sale of a controlled substance in the 3rd degree; criminal possession of a controlled substance in the 5th degree; criminal sale of a controlled substance in the 5th degree (twice); and criminal possession of a controlled substance in the 7th degree. The defendant has also been convicted of resisting arrest; perjury in the 1st degree; and criminal possession of a weapon in the 4th degree. The defendant has previously served sentences of up to 6 years' imprisonment. In addition, the defendant has a history of parole violations. These prior convictions and sentences have failed to deter the defendant from engaging in further criminal conduct that poses a serious danger to the community.

Finally, a Guidelines sentence is needed for specific and general deterrence. As specified above, the defendant is familiar with the criminal justice system, including several narcotics-related convictions and a conviction for criminal possession of a weapon. Despite these previous convictions, the defendant has continued to engage in escalating criminal conduct. Indeed, based on his criminal record and his failure to remain offense free, the Probation Office states that the defendant's risk of recidivism is high. Further, the conduct engaged in by the defendant – including the discharge of a firearm on a public street in Manhattan – endangered the community and provided a dangerous example to others who would contemplate narcotics distribution or violence in furtherance thereof. Thus, the defendant's prior criminal conduct and the need for general deterrence warrant a significant sentence to deter the defendant and others from engaging in similar conduct in order to prevent violence and to protect the public.

\* \* \*

For the reasons set forth above, the Government respectfully requests that the Court impose the mandatory ten-year sentence.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney


By: /s/_____
   Mitzi Steiner
   Assistant United States Attorney
   (212) 637-2284